UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS MARK LUNSFORD, | No. C 09-3842 WHA (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| M. D. MCDONALD, Warden, | |
| Respondent. / | |

**INTRODUCTION**

This is a federal habeas corpus action filed pursuant to 28 U.S.C. 2254 by a *pro se* state prisoner. For the reasons set forth below, the petition is **DENIED**.

**BACKGROUND**

In 2004, a Humboldt County Superior Court jury convicted petitioner of conspiracy to commit murder and first-degree murder. The jury also found true allegations that petitioner had used a firearm to commit the murder, and that the murder was committed after lying-in-wait. Consequent to the verdicts, the trial court sentenced petitioner to life in prison without the possibility of parole, plus one year.[1] Petitioner filed the instant federal habeas petition after he was denied relief on direct and collateral state review.

---

[1] The Honorable John T. Feeney served as trial judge.

Evidence presented at trial demonstrated that in August 2002, petitioner shot to death Nathan Dannemiller, his wife's daughter's husband, over a custody battle regarding petitioner's wife's grandchildren.[2] Ten months earlier, petitioner had been prosecuted for the attempted murder of Dannemiller, but the proceeding ended in a mistrial. At that proceeding, Dannemiller testified that while driving on the day of the shooting, he saw petitioner's truck parked on the side of the road. Soon after passing the truck, a bullet shattered a back window of his car, and about two seconds later, Dannemiller heard another shot. As Dannemiller sped off, he looked in his rearview mirror and saw petitioner following him. Dannemiller was found shot to death a week before petitioner was to appear at a pretrial conference leading to his retrial on the attempted murder charge.

As grounds for federal habeas relief, petitioner claims that: (1) the prosecutor committed misconduct by commenting on defense counsel's handling of certain evidence, in violation of due process; (2) the prosecutor committed misconduct by commenting on the integrity of a defense expert and vouching for prosecution witnesses, in violation of due process; (3) the use of CALJIC No. 2.05 violated due process; (4) trial counsel rendered ineffective assistance in his selection of the defense to present and in his failure to produce exculpatory evidence; (5) trial counsel rendered ineffective assistance by failing to file a motion to exclude evidence of a prior crime; (6) trial counsel rendered ineffective assistance by eliciting evidence that was unfavorable to petitioner; and (7) there is new evidence that he is actually innocent.

## STANDARD OF REVIEW

A federal habeas court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2254(a). The court may not grant a petition with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim

---

[2] Petitioner's wife, Marcella, and her son, Charles Lunsford, were also charged with crimes relating to Dannemiller's killing (Ans., Exh. C at 3 n.3). Marcella and petitioner were tried separately. (Ans. at 1). Charles was found incompetent to stand trial (*id.* at 36).

2

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" 28 U.S.C. 2254(d)(1).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. (Terry) Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254 (d)(2). The court must presume as correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. 2254(e)(1).

The state court decision to which section 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Nunnemaker* at 801–06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000). Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an unreasonable

application of clearly established federal law. *Ibid*. If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

**DISCUSSION**

**1.–2.  Alleged Prosecutorial Misconduct**

Petitioner claims that the prosecutor committed misconduct by (A) commenting on the defense's handling of evidence; (B) impugning the integrity of a defense expert witness; and (C) improperly vouching for prosecution witnesses (Pet., P. & A. 1 & 13). A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness so that there was a due process violation. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005). In order to prevail on federal habeas review, the prosecutor's misconduct must have resulted in prejudice, that is, the misconduct must have had a substantial and injurious effect or influence in determining the jury's verdict. *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

**A.     Comment on Defense's Handling of Evidence**

Petitioner claims that the prosecutor improperly commented on defense counsel's discussion of eyewitness testimony given by Ryan Keefauver, and his father, James, who lived across the street from Dannemiller. The Keefauvers testified that on the day of the murder, they heard two gunshots, and then saw a man run from Dannemiller's apartment building to a nearby parked and idling car, which then left the scene. Ryan testified that the man had "maybe a slight difficulty in running at full speed," and "seemed to be running as though maybe having a knee injury of some sort." James testified that the man's running was not normal or "smooth," his stride was "short," and his feet were hitting the ground "pretty hard." Ryan admitted at trial that he did not mention the man's gait to police when

1   he was interviewed an hour after the shooting. James admitted that he had initially told the
2   police that he had not seen the man, but later remembered having caught a glimpse of him.
3   James also testified that when he told the prosecutor that there was something "strange"
4   about the man's gait, the prosecutor suggested that the man may have had a back injury.
5   This suggestion "made perfect sense" to James (Ans., Exh. C at 5).

6   Petitioner suffers from arthritis in his back. His doctor, Julie Ohnemus, testified at
7   trial that she had treated petitioner, who was determined to be totally disabled in 2000, for
8   this condition (*id.*, Exh. B, Vol. 6 at 2533, 2542). According to Ohnemus, petitioner's
9   condition would not prevent him from running, but running would cause him "a fairly large
10  amount pain" (*id.* at 2550, 2594). Petitioner's relations testified that petitioner often had
11  difficulty walking and performing physical tasks because of his back problems (*id.*, Exh. B,
12  Vol. 9 at 3382–86; Vol. 10 at 3686–87; Vol. 11 at 3739–40).

13  Defense counsel told the jury he found it "disturbing" that the Keefauvers had
14  testified about the man's gait, but they had failed to mention this observation to police when
15  first interviewed. He "pointedly suggested" that James was lying: "But I found that . . . to
16  be disturbing in any case, even in a small case, that someone would come in and lie. But
17  certainly in a case of this magnitude . . . that he would do that is disturbing" (Ans., Exh. C
18  at 7). The prosecutor, in his rebuttal, commented on defense counsel being "disturbed" by
19  the Keefauver's testimony: "Now, I know [defense counsel]; I have a lot of respect for him
20  as an attorney, but let's think about that comment." The prosecutor then discussed how
21  defense counsel had not been disturbed when it became clear that a defense witness,
22  Jonathan Lunsford, petitioner's brother, had probably lied in his testimony. "[I]f someone
23  was disturbed that someone came in here and lied to you under penalty of perjury, the level
24  of disturbance should have started a lot earlier" (*id.* at 7–8). Petitioner contends that these
25  comments by the prosecutor constituted misconduct.

26  The state appellate court rejected petitioner's claims of prosecutorial misconduct.
27  First, petitioner's claims were procedurally barred because defense counsel did not object at
28  trial. Second, the prosecutor had a right to comment on Jonathan Lunsford's credibility.

5

Lunsford made admissions after being recalled to the stand that, according to the state appellate court, "made clear that [he] had not been forthright the day before" when questioned by defense counsel. It was appropriate, according to the state appellate court, for the prosecutor to comment on the state of this evidence.

Petitioner has not shown that he is entitled to habeas relief on this claim. First, it is procedurally defaulted because defense counsel failed to object at trial. Because petitioner failed to sufficiently object at trial and seek admonishments, the claim is procedurally defaulted, and therefore barred from federal habeas review, under the contemporaneous-objection rule. *See Coleman v. Thompson*, 501 U.S. 772, 749–50 (1991), and *Paulino v. Castro*, 371 F.3d 1083, 1092–93 (9th Cir. 2004). Second, the claim fails on the merits. As the state appellate court concluded, the record shows that the prosecutor's comments were fair comments on the evidence, especially considering that Lunsford's credibility had been seriously called into question. Defense counsel had suggested that the Keefauvers were not being truthful. Petitioner responded to such comments, and in so doing pointed out that a defense witness had been less than truthful. A prosecutor may fairly rebut defense counsel's contentions. *See United States v. Bagley*, 772 F.2d 482, 494 (9th Cir. 1985). Accordingly, this claim is DENIED.

### B. Commenting on Defense Expert Witness

Petitioner claims that the prosecutor committed misconduct when he asked the defense ballistics expert, Peter Barnett, about his motivations for testifying for the defense:

> "How do you get paid? . . . And if you come in and testify, you actually get more money because if you look at this stuff and you agree with [the prosecution as to] it, who's going to call you. Right? And if you want to increase your income, you're gonna have to look at this evidence and say no, I do find a difference and that's why it's important for you to pay me money . . . ." The prosecutor also stated later in his closing argument that Barnett had a motive not to provide trustworthy evidence: "I've already talked about Peter Barnett. He's got a motive. He's got a fine motive."

(Ans., Exh. C at 12). Petitioner contends that these comments disparaged Barnett, and unfairly portrayed him as biased. The state appellate court rejected this claim. First, the claim was procedurally barred from review because defense counsel failed to object at trial.

6

1  Second, under state law "it is not improper to comment on the possible bias of a witness, if
2  the comment is based on facts placed in evidence, or reasonable inferences from information
3  that is factually accurate." Third, the questions were based on facts placed in evidence, or
4  arose from reasonable inferences from that evidence. Barnett himself placed such facts in
5  evidence: "[o]n cross-examination, Barnett testified that he primarily testified for
6  defendants, and had only testified for the prosecution in a '[v]ery small percentage,' less
7  than five percent, of the cases in which he presented evidence at trial. Barnett conceded that
8  his 'income level' was tied to the people who hired him" (*id.* at 12–13).

      Petitioner has not shown that he is entitled to habeas relief on this claim. First, it is procedurally defaulted because defense counsel failed to object at trial. Because petitioner failed to sufficiently object at trial and seek admonishments, the claim is procedurally defaulted, and therefore barred from federal habeas review, under the contemporaneous-objection rule. *See Coleman*, 501 U.S. at 749–50, and *Paulino*, 371 F.3d at 1092–93. Second, it is permissible, under both federal and state rules of evidence, to impeach a witness by showing his bias. *See United States v. Abel*, 469 U.S. 45, 51–52 (1984); *People v. Farnam*, 28 Cal.4th 107, 171 (2002). Consonant with this general rule, the trial court instructed the jury that may consider the "existence or nonexistence of a bias, interest, or other motive" in determining a witness's credibility (Ans., Exh. A, Vol. 1 at 220). Under these legal principles, the prosecutor's questions regarding how much the expert witness was paid and how often testifies in favor of the defense were constitutionally permissible. Petitioner has shown no persuasive authority or evidence that the prosecutor violated his constitutional rights by asking these questions. Accordingly, this claim is DENIED.

### C.     Alleged Vouching

     Petitioner claims that the prosecutor committed misconduct when he vouched for the credibility for the prosecution's ballistics expert, Ronald Nies, and for James Keefauver.

//
//
//

United States District Court
For the Northern District of California

**1.     Ronald Nies**

The facts relevant to this claims are as follows:

The ballistics evidence provided by Nies may be summarized as follows: A shell from a rifle was found near Dannemiller's body. Ballistics evidence from Nies linked this shell to a rifle stolen from Donald Manion, who had been a boyfriend of [petitioner's] wife, Marcella. (Manion's rifle was later found in a swampy area about a mile from a house occupied by Marcella and Chasity. Near the gun was a box of ammunition with three rounds missing.) [Petitioner] objects for the first time on appeal to the following statements by the prosecutor about Nies's testimony: "Okay. Let's look at Ron Nies. [¶] Could Ron Nies lie to you? Everyone that came in here could lie to you. Does he have a motive to lie to you? Do you think he wants [petitioner] to go to prison? Maybe. He also probably doesn't know that much about him, doesn't really care that much about the case. It's one of those thousands. Okay. He's just the guy lookin[g] in that [micro]scope to figure out whether he can match one thing to another."

(Ans., Exh. C at 13). The state appellate court rejected petitioner's claim that the prosecutor committed misconduct in this instance. First, the claim was procedurally barred because defense counsel did not object at trial. Second, the rule against vouching does not prohibit the prosecutor from arguing the credibility of testimony, especially when his assertions are based on evidence in the record, or are reasonable inferences deriving therefrom. The comments on Nies, according to the state appellate court, "were based on the evidence regarding Nies and his asserted lack of personal interest in the outcome or bias as a public employee whose position was to analyze ballistics evidence" (*ibid.*).

Improper vouching for the credibility of a witness occurs when the prosecutor places the prestige of the government behind the witness or suggests that information not presented to the jury supports the witness's testimony. *United States v. Young*, 470 U.S. 1, 7 n.3, 11–12 (1985); *United States v. Parker*, 241 F.3d 1114, 1119–20 (9th Cir. 2001).

Petitioner has not shown that the prosecutor's comments constituted improper vouching. First, it is procedurally defaulted because defense counsel failed to object at trial. Because petitioner failed to sufficiently object at trial and seek admonishments, the claim is procedurally defaulted, and therefore barred from federal habeas review, under the contemporaneous-objection rule. *See Coleman*, 501 U.S. at 749–50, and *Paulino*, 371 F.3d

8

at 1092–93.  Second, the record does not support petitioner's claim.  The prosecutor was not placing the prestige of the government or suggesting that there was evidence not presented that supported Nies's testimony.  He was not asserting that Nies was more believable because he was a government employee or witness.  Rather, he was pointing out that Nies's task was to look at the evidence impartially to see what, if anything, the evidence showed. Because this record fairly supports the state appellate court's determination, petitioner's claim is DENIED.

### 2. James Keefauver

The relevant facts are as follows:

> [Petitioner] also contends the prosecutor improperly vouched for James Keefauver.  Here the prosecutor argued as follows: "Jim Keefauver, [Ryan Keefauver's] dad.  Very concerned about his son.  Never identified the officer — the suspect before.  Never even mentioned that he saw him.  Came in here and said, 'You know what?  After I thought about it, I did see him.'  Make what you will of that.  I think he's credible.  I don't think he has an investment, but I'm not a juror."

(Ans., Exh. C at 14).  The state appellate court rejected petitioner's claim that the prosecutor committed misconduct in this instance.  First, it was procedurally barred because no objection was made at trial.  Second:

> these comments were based upon the evidence or reasonable inferences drawn from the evidence, especially relating to James Keefauver's testimony that he had not at first thought that he had seen someone fleeing from the scene, but later realized he had seen him; and the fact that Keefauver had no obvious personal investment in the case or other motive to lie out of animus or hostility to [petitioner].  In any event, the prosecutor also made clear that it was the jury's decision to determine credibility, not his.

(*ibid.*).

This order must respectfully disagree with the state court as to how these comments were intended or understood.  Such comments indeed improperly used the prestige of the government to bolster Keefauver's credibility.  Petitioner is not, however, entitled to habeas relief on this claim.  First, it is procedurally defaulted because defense counsel failed to object at trial.  Because petitioner failed to sufficiently object at trial and seek admonishments, the claim is procedurally defaulted, and therefore barred from federal habeas review, under the contemporaneous-objection rule.  *See Coleman*, 501 U.S. at 749–

9

50, and *Paulino*, 371 F.3d at 1092–93. Second, petitioner has not shown prejudice. James Keefauver's testimony was duplicative of his son's, to whose testimony petitioner has not objected. Also, by reminding the jury that James did not remember the incident for some time, defense counsel raised some question as to James's credibility, thereby countering somewhat the power of the prosecutor's comments. Furthermore, even without James's testimony, the evidence against petitioner was quite strong. At the time of the killing, petitioner was facing a retrial on charges that he attempted to kill Dannemiller (who had testified that he had seen petitioner's truck near to the scene of the shooting, and had seen petitioner as he drove away from the scene), Dannemiller had been shot prior to petitioner's retrial, and a man matching petitioner's description, including his hobbled gait, was seen fleeing the scene after witnesses heard two shots. On this record, petitioner's claim is DENIED.

All petitioner's prosecutorial misconduct claims are DENIED because he has failed to show that there was "no reasonable basis for the state court to deny relief," *Richter*, 131 S. Ct. at 784, that is, he has not shown that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.

**3.    CALJIC No. 2.05**

Petitioner claims that the trial court violated his right to due process giving the jury CALJIC No. 2.05 ("Efforts Other Than by Defendant to Fabricate Evidence"), which, as read to petitioner's jury, is:

> If you find that an effort to procure false or fabricated evidence was made by another person for the defendant's benefit, you may not consider that effort as tending to show the defendant's consciousness of guilt unless you also find that the defendant authorized that effort. If you find defendant authorized the effort, that conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide.

(Ans., Exh. C at 16). Petitioner claims that this instruction (A) was improperly given because there was no evidence that he had authorized the presentation of false or fabricated testimony; and (B) impermissibly lowered the prosecution's burden of proof (Pet., P. & A. at 20).

10

### A.     Evidentiary Support

The facts relevant to this claim are as follows:

> To place this contention in context, we note that the trial court first stated, during the settlement of the jury instructions, that it would not give CALJIC No. 2.05. The prosecution then argued that the instruction applied to the testimony of James Cook. Cook had testified at trial that a man named Shaun Visser admitted to Cook that he "had killed a guy that molested a kid or somethin[g]." This admission was allegedly made after Dannemiller's murder. Cook testified that he later discussed Visser's admission with defendant's brothers while they were out hunting sometime after Dannemiller's murder. Visser committed suicide after Dannemiller's murder, and the defense suggested Visser had been the killer. In arguing for this instruction, the prosecutor argued that if the jury believed Cook's testimony was not true, "then what you have is an effort by someone, not the defendant, to fabricate evidence for the defendant. And all this is instructing the jury is if they, in fact, find that, it means nothing, unless they think that it was somehow authorized by the defendant."
>
> The trial court observed that "Cook testified that he did have some contact with Douglas Lunsford's brothers, Kenny and Carson, soon after the death of Shaun Visser. And I'm not making any — I certainly won't make any comment to the jury with respect to that, but I do find now there's a factual basis for the Court to give 2.05. So I will, as requested by [the prosecutor], I will give 2.05." Defense counsel objected to giving the instruction.

(Ans., Exh. C at 16–17). On appeal, the attorney-general largely abandoned this reasoning, contending instead that the testimony of Jonathan Lunsford, petitioner's brother, offered an adequate evidentiary basis for the use of the instruction:

> The People argue this instruction was properly given because it applied to other evidence, i.e., that [petitioner] asked his brother Jonathan to help him alter the appearance of his truck by placing a camper shell on it the morning of Dannemiller's attempted murder. In closing argument, the prosecutor related Jonathan's testimony to this jury instruction, without any objection at the time of trial.

(*Id.* at 17). The state appellate court rejected petitioner's claim, agreeing with the attorney-general that Jonathan's testimony provided a sufficient evidentiary basis (*id.* at 18).

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the disputed instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1992). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Ibid.* In other words, a federal habeas court must evaluate

11

jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

Petitioner has not shown that he is entitled to relief on this claim because he has not shown that he was prejudiced by its introduction. The instruction, even if given in error, had
a small influence on the trial when it is seen in the context of the trial record. For example, the evidence against petitioner was quite strong. At the time of the killing, petitioner was facing a retrial on charges that the attempted to kill Dannemiller (who had testified that he had seen petitioner's truck near to the scene of the shooting, and had seen petitioner as he drove away from the scene), Dannemiller had been shot prior to petitioner's retrial, and a man matching petitioner's description, including his hobbled gait, was seen fleeing the scene after witnesses heard two shots. On such a record, petitioner's claim is DENIED.

### B. Reasonable Doubt

The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove every element charged in a criminal offense beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364 (1970). If the jury is not properly instructed that a defendant is presumed innocent until proven guilty beyond a reasonable doubt, the defendant has been deprived of due process. *See Middleton v. McNeil*, 541 U.S. 433, 436 (2004). Any jury instruction that 'reduce[s] the level of proof necessary for the Government to carry its burden . . . is plainly inconsistent with the constitutionally rooted presumption of innocence." *Cool v. United States*, 409 U.S. 100, 104 (1972).

Turning to the instant action, petitioner's constitutional objections to CALJIC No. 2.05 are without merit. The instruction does not reduce the beyond a reasonable doubt standard. First, it clearly states that evidence of petitioner's authorization of the presentation of false evidence is <u>not</u> sufficient to show that petitioner committed the crimes charged. Rather, it states that such evidence is but one piece of evidence to consider with all the other evidence, and the jury can give the evidence any or no weight. Second, consonant with *Winship*, the jury was given instructions that guilt had to be shown beyond a reasonable

doubt (Ans., Exh. A, Vol. 1 at 211).  Nothing in CALJIC 2.05 lowers that standard, and petitioner has made no showing to the contrary.

On this record, all petitioner's prosecutorial misconduct claims are DENIED because he has failed to show that there was "no reasonable basis for the state court to deny relief," *Richter*, 131 S. Ct. at 784, that is, he has not shown that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.

**4.–6.   Assistance of Counsel**

Petitioner claims that defense counsel rendered ineffective assistance by (A) using a deficient defense and by failing to produce exculpatory evidence; (B) failing to move to exclude evidence of a prior crime; and (C) eliciting testimony that was unfavorable to petitioner.

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of counsel, the petitioner must establish two factors.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *id.* at 687–68, "not whether it deviated from best practices or most common custom," *Richter*, 131 U.S. at 788 (citing *Strickland*, 466 U.S. at 650).  "A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance." *Richter*, 131 U.S. at 787 (quoting *Strickland*, 466 U.S. at 689). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Ibid.*  Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

A reviewing federal habeas court must accord tactical decisions by trial counsel considerable deference. "[C]ourts may not indulge 'post hoc rationalizations' for counsel's decision-making that contradicts the available evidence of counsel's actions . . . neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Richter*, 131 S.Ct. at 790 (citations omitted). Tactical decisions of trial counsel deserve deference when: (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances. *See Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

**A.    Defense**

Petitioner claims that defense counsel rendered ineffective assistance by blaming Shaun Visser, rather than Charles Lunsford, for Dannemiller's killing. Shaun Visser, who committed suicide a few weeks after Dannemiller was killed, roomed with one of petitioner's siblings for about two years, was present during many of the Lunsford family's discussions regarding the child custody issues involving Dannemiller, and confessed to killer Dannemiller. According to trial testimony, Visser killed Dannemiller out of the mistaken belief that he was molesting his children. Charles Lunsford, petitioner's stepson, allegedly confessed to killing Dannemiller, and his mother, petitioner's wife, was willing to testify to this.

Petitioner bases his claim of ineffective assistance on the following: (1) numerous witnesses identified Charles's car as the one seen leaving the crime scene; (2) one witness saw a figure in the car identified as Charles's; (3) another witness saw a stocky man with a "real heavy foot" jump into the driver's side of Charles's vehicle; (4) petitioner's wife would have testified that Charles confessed to her that he killed Dannemiller; (5) Charles made several statements prior to Dannemiller's death in which he offered to kill Dannemiller, and (6) Charles, like petitioner, was charged with conspiracy to commit murder and murder. As noted above, Charles was found incompetent to stand trial.

14

Petitioner has not shown ineffective assistance under *Strickland*. As to the first prong of the analysis, petitioner has not shown that defense counsel's performance was deficient. Specifically, the record shows that the selection of the Visser defense was an informed tactical decision that was reasonable under the circumstances. Visser, like Charles, had allegedly confessed to the murder, an alleged confession made weightier by Visser's suicide after Dannemiller's death. The fact of Visser's suicide could serve two useful defense purposes. First, counsel could contend that Visser killed himself because of his guilt over the killing. Second, Visser's death places him beyond challenge through cross-examination. Under such considerations, defense counsel's tactical choice was reasonable under the circumstances. Related to this choice, counsel's rejection of the Charles defense was also reasonable. Witnesses asserted that they saw Charles's car, not Charles himself, petitioner's wife's testimony could be challenged on cross-examination, and Charles was found incompetent to stand trial. Furthermore, the evidence petitioner highlights suggests that Charles acted as petitioner's accomplice, rather than exonerating petitioner. Charles was in fact charged with conspiring to kill Dannemiller. On this record, petitioner has not shown that defense counsel's performance was deficient.

Petitioner also has not shown prejudice under the second *Strickland* prong. The record shows that the Charles defense was at least as problematic as the Visser defense. Therefore, petitioner has not shown that there is a reasonable probability that the outcome of the proceeding would have been different had defense counsel pursued the Charles, rather than the Visser, defense. Prejudice has also not been shown because the evidence against petitioner was strong. He was facing a retrial on charges that the attempted to kill Dannemiller, who had testified that he had seen petitioner shooting at him, and a man matching petitioner's description was seen fleeing the scene after witnesses heard two shots. Accordingly, petitioner's claim is DENIED.

**B.     Prior Bad Act Evidence**

Petitioner claims that defense counsel rendered ineffective assistance when he failed to move to exclude evidence regarding petitioner's attempted murder of Dannemiller. This

15

claim is without merit. Petitioner has not shown that such a motion by defense counsel would have been successful. The circumstances of Dannemiller's attempted murder were relevant to the charges, as it provided evidence of state of mind and intent both for the murder and conspiracy charges. It is both reasonable and not prejudicial for an attorney to forego a meritless objection. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005).

Petitioner counters this by asserting that defense counsel should have moved to suppress the evidence as being more prejudicial than probative. Such contention is unavailing. Petitioner has not shown that such a motion would have been successful. The attempted murder of Dannemiller by petitioner was highly probative of the issues before the jury deciding petitioner's guilt, especially when one considers that the victims, alleged perpetrators, and means of committing the crimes were identical. On such a record, petitioner has not shown the trial court would have ruled that the evidence was more prejudicial than probative. Accordingly, his claim is DENIED.

### C. Elicitation of Testimony

Petitioner claims that defense counsel rendered ineffective assistance during his cross-examination of Jonathan Lunsford, petitioner's brother. On direct examination by the prosecutor, Jonathan testified that on the day of the murder, petitioner brought him a rile case, and asked him to put the case with his rifles. Jonathan testified that he believed that petitioner also said to him that someone had shot at Dannemiller. On cross-examination by defense counsel, Jonathan testified that (1) he had not looked inside the rifle case (though on redirect he testified that he believe it contained a gun); (2) petitioner had owned a gun years earlier, but Jonathan did not know the caliber, though he speculated that it might have been a 30-30, a .35, or a .20,[3] (3) did not know whether petitioner owned or possessed a gun at the time of the murder, but he did notice that the rifle case was missing from his closet the day after the murder, (4) petitioner, following the mistrial, had given Jonathan any object petitioner had that could be construed as a weapon, and (5) petitioner told Jonathan that he had cut up the rifle that had been in the rifle case (Ans., Exh. B, Vol. 4 at 1964, 1980–81,

---

[3] A 30-30 shell casing was found next to Dannemiller's corpse (Ans., Exh. B, Vol. 7 at 3028).

16

1983). Petitioner contends that eliciting responses (1)–(5) constituted ineffective assistance of counsel.

Petitioner's claim is without merit. The elicitation of responses (1)–(3) cannot have resulted in prejudice. As to (1)–(2), that petitioner owned gun was known to the jury. A prosecution witness, Jennifer Sams, petitioner's stepdaughter, had testified to that fact (Ans., Exh. B, Vol. 5 at 2320). As to (3), that Jonathan did not know whether petitioner had a gun at the time of the killing is at worst ambiguous as to petitioner's guilt. As to (4) and (5), petitioner also has not shown prejudice. Though such responses would tend to indicate some sort of suspicious activity, their elicitation cannot overcome the heavy weight of the evidence against petitioner. As noted above, petitioner was facing a retrial on charges that he attempted to kill Dannemiller, who had testified that he had seen petitioner shooting at him, Dannemiller had been shot prior to petitioner's retrial, and a man matching petitioner's description was seen fleeing the scene after witnesses heard two shots. Accordingly, petitioner's claim is DENIED.

All petitioner's ineffective assistance of counsel claims are DENIED because he has failed to show that there was "no reasonable basis for the state court to deny relief," *Richter*, 131 S. Ct. at 784, that is, he has not shown that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.

### 7. New Evidence

Over four months after submitted his traverse, petitioner filed a motion to supplement the record (Docket No. 14). In this motion, petitioner contends that while in custody Charles Lunsford confessed to petitioner's sister, Irene Hopkins, that he killed Dannemiller.[4] Hopkins's statement to this effect is appended to the motion. Petitioner believes that a recording of the conversation between Charles and Irene exists because, as he believes, all such custodial conversations are recorded. Petitioner contends that defense counsel

---

[4] Petitioner also appends a declaration by Sharon Cain, also petitioner's sister, in which Cain states that she gave to defense counsel evidence of another of Charles's confessions. As this evidence was known to defense counsel when he rejected the Charles Lunsford defense, Cain's declaration is not relevant to petitioner's current motion regarding the discovery of new evidence.

17

rendered ineffective assistance in not investigating this evidence, which, in petitioner's opinion, shows that he is innocent of the crimes.

Petitioner's claim must be denied. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurred in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Petitioner has not shown that an independent constitutional violation occurring in the underlying state criminal proceedings, specifically that defense counsel was ineffective in failing to investigate and present this evidence. First, the evidence is duplicative. It was known that Charles had allegedly confessed to the killing. As noted above, defense counsel's decision not to blame the murder on Charles was a reasonable tactical decision under the circumstances of the case, despite Charles's alleged confession. Second, there is no evidence that a recording of the Charles-Irene conversation exists. Third, and most significantly, petitioner has made no showing that defense counsel should have investigated these allegations. In her statement, Irene Hopkins states that she could "not recall the exact date" of the conversation with Charles. "It was," she writes, "during the very end of the case of Nathan Dannemiller." From this, it is reasonable to conclude that defense counsel could not have presented such evidence even if defense counsel known of it. By the end of trial, defense counsel had completed his investigations, and had known all along that Charles had made other alleged confessions. He could not have rendered ineffective assistance by failing to present evidence that did not appear until well after trial had started. Also, by the end of trial, defense counsel had probably presented his defense that Visser was the murderer. Switching to the Charles defense would likely have damaged the defense. On this petitioner has not shown that defense counsel rendered ineffective assistance. Petitioner, then, has not shown an independent constitutional violation occurring in the underlying state criminal proceeding. Accordingly, his claim is DENIED.

//

//

**CONCLUSION**

The state court's adjudication of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. Nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is **DENIED**.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals. The Clerk shall enter judgment in favor of respondent, terminate Docket No. 14, and close the file.

**IT IS SO ORDERED.**

Dated: July 7, 2011

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE